Good morning. May I proceed? Sure. Good morning, Your Honors. May it please the Court, Cory Ferrentino on behalf of Petitioner Michael Mann. Petitioner in this case agrees with the magistrate's report and recommendation. The State Court unreasonably applied the Supreme Court precedent in the Marion and Dillingham decisions. The U.S. Authority under Marion and Dillingham actually applied to the restraint in this case, and there's actually more factors relating to restraint and the charge of Mr. Mann than there was in Dillingham. Here the defendant was arrested, charged, arraigned, and released on bail. The government's argument that the bond was exonerated and, therefore, the speedy trial right somehow tolls is really a red herring, and should not distract the Court from the speedy trial analysis and the fact that the principles What is the effect of exonerating the bond in your view? The, well, I think it's somewhat unclear in the record exactly what occurred as far as the exoneration of the bond, but what is clear is that a warrant was then issued. Mr. Mann was I thought the warrant was released upon exoneration of the bond. There was a warrant issued upon exoneration of the bail for Mr. Mann in the exact same case under the same case number, which would assure he would be returned to State court upon the release of his Federal incarceration. This brings up a question I had, too, about maybe what the local jargon is. I'm from Arizona. It's not unusual if somebody's supposed to be in court at 9 o'clock. He's not there. The judge says I'm going to issue a bench warrant, but I'm going to hold it and see if he can get him here at 2 o'clock, and at 2 o'clock comes and goes. The guy's not there. The judge releases the warrant. It gets put into the system. That's one way of, that's the way I thought they were using the term release. He exonerated the bond because the guy's actually in Federal custody, so he let the bail bond company off the hook. Is that what happened here? I think both occurred. The bond was exonerated, so the bail bond company is off the hook. The collateral is released, and then a warrant was issued. And you could say a warrant was released, a warrant was issued. But release didn't mean the judge tore up the warrant. He gave it to the clerk and said go ahead and now put it into the system. Right, and into the system so that any correctional facility, when they're clearing Mr. Mann before his release, will say there's a hold. When you walk into a trial court and you say does my client have any holds, you ask that to the bailiff, and the bailiff runs to see if there's any warrants anywhere. So there's clearly a hold on Mr. Mann by the State of California. They would assure his presence immediately following his Federal incarceration at the end of the incarceration. When you get right down to it, he wasn't in Federal custody from the time, I mean, he wasn't in State custody from the time the judge issued the warrant until he winds up getting ridded back into the State system. He wasn't in State custody, but he did have a State hold, and the State had basically a hold on his liberty. He was not going to be released from Federal custody. He was coming back to the State. So in my opinion, they had a hold on his liberty. But I think what's more important is the Sixth Amendment analysis protections are there to protect certain principles, the social, the psychological, the financial harm that comes to an individual when they've been arrested and charged with a crime. That bell had already rung. Mr. Mann had been arrested. He had been brought to court. He'd been charged. He'd been arraigned, and he had been released on bail. There were financial considerations. He hired a lawyer. He posted bail. There were social considerations. His Federal case was for cultivating marijuana. As we all know, marijuana has not become the horrible devil's activity that it maybe used to be. The charges in this case in some way were much more serious. So he has that social stigma of being charged with those kinds of charges. It also impacted his Federal incarceration. It precluded him from seeking rehabilitation in Federal prison, precluded him from all kinds of things that he might have been able to, the way that he was housed. There was anxiety. There was concern on the part of him and his family to the degree that he hired a lawyer to try and negotiate the State case while he was in Federal custody. He had a lawyer that was saying, don't worry about it, just hide out and see if they're going to come get you, which the law says, you know, we look to that. And in this case, Mr. Mann didn't do that. He ignored his lawyer's recommendations, and he said, I want you to go out. I want you to contact the DA. I want you to try and negotiate a settlement. I want a settlement that can globally take care of everything so I can get on the track to rehabilitation. And instead, the district attorney sat back and did nothing. You know, the district judge said, basically, I agree with what you're saying, but there's no Supreme Court case that we can put our finger on that's on point that says that the California court was wrong. I disagree with that. Marion is on point, and Dillingham is even more on point. In Dillingham, there was arrest and nothing more. And the court found that that restraint was enough to determine that he was an accused and he was afforded the speedy trial protections under the Sixth Amendment. Where was that guy while he was waiting for his trial? Under Dillingham? The case you just mentioned. Dillingham. You know what, it's unclear in the opinion where he is. Okay. In our case, it's clear the guy's in federal custody. He's not in state custody. But it's not just a matter of being in custody. I mean, people are released on bail, and they're, you know, not in custody. Nobody's under the control of the state court if you're released on bail. Our guy, there's no bond. There's just an outstanding warrant. He's not before the court. But that warrant is in the system. And that warrant, the DA knows that warrant is in the system, that the correctional facilities are going to check before they release him. And they're going to ship him back to California. It's as if the warrant was executed. I mean, they don't go and serve the warrant on Mr. Man while he's sitting in federal custody. What they do is they put it in the system, knowing the correctional facilities are going to do a warrant check. And the minute he gets released from federal prison, as he's walking towards the gate, they're going to go, wait, there's a California warrant. We're taking you to California court. They had a hold on him. His liberty was held this entire time. But, again, I think that's a red herring. I think the real critical argument is that the principles underlying Marion and Dillingham, underlying the Sixth Amendment protection, is once you aren't accused and you come to court and you're charged, you've been arrested, you've been charged, it implicates speedy trial, Sixth Amendment right. On direct appeal, the arguments were not that Dillingham and Marion didn't apply. And so to say now that they don't apply or it doesn't cover this case is somewhat disingenuous. I mean, the issue is that the court misapplied Supreme Court authority and relied on Martinez. Martinez is completely different. In California, Martinez was released, arrested on a DUI, released with no bail issued, no bail warrant or anything, then gave an address, an arraignment letter is sent, apparently the person never got the arraignment letter, failed to appear, and then sometime three years later gets arrested on another charge. There was no arrest and charging in that case. In our case, we have an arrest, bring him to court, he's charged, he enters a plea of not guilty, and then he posts a $100,000 bail. It is completely different than Martinez. The court misapplied Marion and Dillingham in the California State Court, and that's what the magistrate found in this case. It's not that complicated. And I think that to say that Marion and Dillingham don't apply is disingenuous, and the government's able to do that in this case because it's a red habeas corpus, but that really is sidestepping the clear analysis here. We have more than Dillingham had. I mean, Mr. Mann, you know, I mean, Dillingham was arrested. Here, you know, Mr. Mann not only was arrested, he posted bail, he, you know, came to court, he entered his plea of not guilty. And he did suffer the principles that the Sixth Amendment is designed to protect against, that anxiety. I mean, those are things that happen at the time you go to court. You're publicly charged, and the community and the public knows that you've been charged. You suffer that anxiety and concern about your future and what you're going to do. You suffer the financial concerns. You hire a lawyer right then and there, even though you're going off to federal custody, to negotiate your state case, and you've posted a bond. His lawyer eventually requested a trial. I'm sorry? His lawyer eventually requested that he come to trial. Well, eventually they figured out how to file a demand, and they requested to go to trial. Why didn't he do that five years earlier? I think that he wanted to negotiate the case. I don't know that he knew how, and I think that he wanted to do it. That he had a lawyer. The lawyer indicated on the record that he didn't know how to do it, Mike Sheldon, and that he learned how to do it after the negotiations broke down. Well, I thought you said that the lawyer told him to kind of lay in the weeds and just let it go, and it seems to me like just looking at this facially, that's exactly what happened. He waited. Just a minute, counsel. He waited until so much time had gone by that counsel would be able to argue a speedy trial act violation. Then he said, well, I want a trial. I do want to say sometime there are two lawyers, so it may have misunderstood. His trial lawyer told him to wait. His federal lawyer told him to wait. He had a second lawyer, Mike Sheldon, who was a state lawyer, and that lawyer is the one that tried to negotiate with the district attorney on two occasions. Well, obviously that didn't happen, so he could have. I mean, Judge Silberman, why didn't he request a trial years earlier? He was the DA. It's not his duty under the analysis. But you're the one that made the argument. What he did is he tried to negotiate the case, and the district attorney has absolutely no justification for bringing him sooner. They knew where he was. They knew how to contact his attorney, and there were discussions. I would like to save a little time for rebuttal if. You've got 11 seconds left. I know. Thank you. Thank you. Wasn't it 11 seconds was enough last night for Villanova? Yeah. For one of us. And we're going to round it up to a minute being the magnanimous people that we are. Okay. I'm going to take more than 4.7 seconds. All right. Good morning. Good morning. Andrew Messman, Deputy Attorney General, on behalf of Respondent. I hear the state court's rejection of Mann's speedy trial claim was not contrary to or an unreasonable application of clearly established law as determined by the U.S. Supreme Court. Now, Marion does tell us that the Sixth Amendment right is triggered by formal indictment or information. There's formality there. Or the actual restraints imposed by arrest in holding to answer the criminal charges. And the cases that followed make it clear that a defendant arrested and then released on bond is still subjected to actual restraints. And that's the Dillingham case. Now, a defendant neither under indictment nor subject to bail is not. And that's the Loudhawk case. Here the state court reasonably concluded that Mann's speedy trial right was not triggered until he was brought back to trial after the bond held against him was exonerated. At that point, he was no longer under the restraint of the state court, notwithstanding the fact that this warrant may have been in the system. He was, at that point, it's reasonable to conclude he was under the custody of another sovereign here. And the state court had no actual restraints against his liberty. Well, there was a warrant out for his arrest. There was a. The whole time he was in prison, wasn't it? There was. The warrant was released. Well, but that's the whole point that Judge Silverman was making. Yeah. Effectively. There was also, I believe, a new warrant for failure to appear that was. Correct. A few days later, they did hold a hearing and they issued a warrant for failure to appear. That's right. And that would be the formal charging document, like an information or an indictment. That would be, my argument would be the equivalent to having a complaint in the system without an arrest. There's no restraint on the liberty alone with just a complaint. You're kind of analogizing this to a situation where somebody, let's assume somebody gets arrested. They're, for whatever reason, a warrant is issued. They disappear. Just disappear. They're not in jail. They disappear. The bond gets exonerated for some reason because whatever. The judge doesn't think that the bonding company was at fault in this circumstance. And the guy's off somewhere. And then finally, he walks back in the door five years later and says, I want a trial. But I have a speedy trial act. That's what you're arguing. Well, yes. Correct. It's subject to the restraints imposed by arrest and holding to answer to the criminal charges. But the difference here is that they knew where he was. They did. And he was in the hands of another sovereign here and not the State. So while they knew where he was, the State court was not imposed, did not have any imposition on his liberty. At that point, the Federal court did. Has the State made the argument that this attempt to negotiate the State case was a waiver of the speedy trial right? No, not a waiver. But it was a factor in the reason for the delay when we fast-forward to the Barker v. Wingo factors. I don't think we need to get to that because our argument is that the speedy trial was not triggered until he was actually brought back into State custody later on after his demand. And here, it was reasonable to conclude that his custody was interrupted by the separate sovereign here, the Feds. And at that point, there was no liberty. And when the State court has denied a State prisoner's constitutional claims on the merits, a Federal court may not grant relief on the same claim unless the State court has committed an obvious and indisputable error. And here, based on the case law that existed, as you pointed out, there was no direct authority from the U.S. Supreme Court with this factual scenario. It cannot be said that there was an obvious and indisputable error here. Now, even utilizing the trigger date of when the defendant was brought in, or I'm sorry, the trigger date of when he was arrested in 2002, he's still not entitled to relief because when you're evaluating prejudice under the Barker factors, the lengthy delay would be presumptive prejudice. But in terms of actual prejudice, this court needs to look at three factors, as opposing counsel has identified, whether or not there was oppressive pretrial incarceration. And here, there wasn't. He was in Federal custody. How about his claim that he lost his opportunity to work out a package deal? Well, he did attempt to negotiate a deal while he was in incarceration. And it's speculative to say he would have gotten a package deal. Here, when he was ultimately sentenced, he didn't get a package deal. So I don't think we can— Well, he couldn't get it because it was already a done deal. I think they could have ran it concurrent. The State Court could have ran his sentence concurrent with the Federal sentence he was serving. But they chose not to. So it's just speculative at that point. But with regard to the anxiety and concern that he was facing, he did make his point that he was wishing to get a better custody status and pursue rehabilitation. But there was no disruption on his employment. His financial resources weren't drained. He would have had to hire a state attorney anyway. He was already in custody, so he was not subjected to any more public shame. If he were in the Orange County jail and not in the Federal lockup, his clock would be running, right? Yeah, I think that's a stronger argument because it's not a separate sovereign here. Okay, and in our case, the Orange County judge knows that he's in the Federal custody. In effect, the feds are holding him for you, for the state. Why wouldn't we, as Judge Ezra says, you're treating this guy as if he's really on the lam when he's really being held by the Federal authorities with your blessing. Well, but he's still not subjected to the restraints by the State Court, notwithstanding the fact they're aware of his existence. There's no formal charging document against him. The second prong of Marion requires arrest and being held to answer, and he's in Federal custody. And the judge doesn't know what's going to happen. I mean, there were negotiations going on. And at that point, he's just in a separate sovereign there and not being restrained by the state. And it goes back to whether or not the State Court's decision was contrary to or an unreasonable application of the United States Supreme Court. And, you know, because there's no U.S. Supreme Court directly on point, a reasonable jurist could disagree about the correctness of the State Court's opinion. The district court's judgment should be affirmed here. If there's any other questions, I would submit. Thank you very much, Mr. Mismanus. Ms. Verapino, we'll put a minute on the clock for you. Not quite as fast as Villanova. Under Supreme Court authority, the Sixth Amendment right kicks in when there's actual restraint imposed by arrest and charge. The Court says the Sixth Amendment need not wait for indictment, information, or formal charge. That's the analysis under Marion and Dillingham. His point is that's all true if he were in state custody and he's being held by somebody else. It has nothing to do with what custody he's in. It has to do with being arrested and being charged. So if he were in prison in Canada, would that count? I think that it would if they knew where he was. I think the fact is there may be other issues under Barker v. Wingo whether or not they can get him in due diligence and all that, but I think the speedy trial right kicks in once he's there and there needs to be some effort. Then the district attorney would make an effort. And under Barker v. Wingo, he may not win because the district attorney made an effort. Here there's absolutely no justification for the district attorney. They knew where he was. There is a procedure to get him over from state court. It's laid out nicely in the magistrate's report and recommendation, and the district attorney utilized that statute within months of the demand that was filed. So it's very easy for the state to bring over an inmate. There is no evidence in the record at all of any justification for the delay. The government now wants to tell you that there's some justification, the negotiations, but that was never raised in the trial court. Okay, I see you're out of time. Thank you very much. Okay, thank you. Thank you, both counsel. The case just argued is submitted. Good morning.
judges: Silverman, Graber, Ezra